Filed 4/16/14  Henry v. J.P. Morgan Chase Bank CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SUSAN HENRY et al., | B249535 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC471448) |
| v. | |
| J.P. MORGAN CHASE BANK et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Terry A. Green, Judge.  Affirmed.

Law Offices of Thomas W. Gillen, Thomas W. Gillen; Law Offices of Lenore Albert and Lenore Albert for Plaintiffs and Appellants.

Keesal, Young & Logan, Elizabeth P. Beazley and Tara B. Voss for Defendants and Respondents.

Appellants Susan and Randy Henry appeal the judgment entered after the trial court sustained a demurrer without leave to amend to their first amended complaint (FAC) asserting claims for fraud, unfair competition, and declaratory relief against various parties involved in the lending transactions through which appellants purchased their home. Based on independent review, we conclude the FAC failed to state a cognizable claim and that there is no reasonable possibility that its defects could be cured by amendment. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Background Facts*

The essential background facts are not in dispute. In 2007, appellants purchased a Northridge home for $687,500. The purchase was financed with two loans: one for $550,000 and the other for $103,125, each secured by a deed of trust.[1] Bear Stearns Residential Mortgage Corporation (Bear Stearns) was the lender.[2] The larger of the two loans was an option adjustable rate mortgage or "option ARM."[3]

---

[1] Appellants paid approximately $60,000 cash out of pocket.

[2] Respondent J.P. Morgan Chase (Chase) was alleged to be the owner of Bear Stearns. Respondent California Reconveyance Company was alleged to be trustee on the deeds of trust securing the property. Respondent Mortgage Electronic Registration Systems, Inc. (MERS) was an alleged nominee of Chase. Respondent Wells Fargo Bank N.A. allegedly claimed a beneficial interest in the property.

[3] In their brief, appellants described the larger loan as a "thirty-year ARM." However, in their complaint and amended complaint they alleged that despite regular payments, the balance due on the loan went up. This is characteristic of an option ARM, a type of loan which not only has an adjustable interest rate, but also gives the borrower the option of making a monthly payment less than the amount necessary to pay the interest accruing on the loan principal for a certain number of years. (See *Boschma v. Home Loan Center, Inc*. (2011) 198 Cal.App.4th 230, 234 (*Boschma*) ["[A] borrower who elects to make only the scheduled payment during the initial years of [an] Option

*(Fn. continued on next page.)*

2

On July 5, 2011, the trustee commenced a non-judicial foreclosure, recording a notice of default and election to sell under the deed of trust securing the larger of the loans with the Los Angeles County Recorder's Office.  On the same date, the beneficial interest under the deed of trust was assigned to Wells Fargo and a substitution of trustee recorded.  In November 2011, the property was sold to Wells Fargo.

B. *Appellants' Complaint*

In October 2011, while the foreclosure was pending, appellants filed the underlying complaint.  The complaint contained a lengthy discussion of the factors that contributed to the recent financial crisis and collapse of the housing market, including the decision to compile pools of subprime loans and market them to investors.  The complaint quoted various politicians and other public officials concerning the need to increase regulation to reduce the systemic risk and ensure that the housing market remained strong.  The complaint asserted claims for fraud, declaratory relief/accounting, breach of contract, failure to comply with the statutes regulating foreclosure, and unfair competition in violation of Business and Professions Code section 17200 (section 17200).  Respondents demurred, contending among other things that the cause of action for fraud had been pled with insufficiently specificity.  Days before the demurrer was to be heard, appellants filed the FAC.

The FAC reiterated the original complaint's recitations of the factors contributing to the financial crisis.  The FAC omitted several causes of action pled

_____

ARM owes more to the lender than he or she did on the date the loan was made.  After an initial period of several years . . . , a borrower's payment schedule then recasts to require a minimum monthly payment that amortizes the loan."].)

in the original complaint, leaving fraud, unfair competition in violation of section 17200, and declaratory relief.  The first cause of action for fraud alleged that "[i]n 2007, the duly authorized directors, officers, brokers, agents, [and] appraiser of defendants Chase Bank (Bear Stearns) and Does 1-10 . . . made the following representation to [appellants]:[4]  [¶] (a)  The current Market Value of the Northridge Residence was $687,500 and; [¶] (b) By financing the major portion of its purchase price with an ARM loan, [appellants] could keep the near term monthly payments down, obtain several years of appreciation in the value of the home, and sell or refinance the home at an appreciated value before having to pay the much higher ARM payment which would be required beginning September 2011 . . . ."  (Caps omitted.)  The FAC went on to allege that at the time the representations were made, these respondents "knew that the $687,500 appraisal of the Northridge Residence was highly and outrageously speculative, and that this loan was not in the best interests of [appellants], but rather in the best interest of defendants . . . , and [these respondents] also knew . . . and or had constructive notice . . . that the real estate market was in a speculative spiral."  These respondents allegedly withheld disclosing "the speculative nature of the existing and future values of the real property which were the direct result of the financial institutions in creating and marketing [securitized subprime loans or loan pools]."  The FAC further alleged that the representations were false, that the persons making the representations knew they were false, and that the representations were made with the intent to induce appellants to enter into the loans.

---

[4]     Elsewhere the FAC alleged that the representations were made by these respondents' "Lending Personnel."  Although the fraud cause of action named "[a]ll [d]efendants," it did not identify any misrepresentations made by the agents of other defendants.

4

In the second cause of action for unfair competition in violation of section 17200, the FAC re-alleged the representations set forth above, but attributed them to the lending personnel of all respondents. It asserted that the acts of "misrepresenting the true value of [appellants'] home and luring [appellants] into [an] expensive, negative ARM loan with the promise of a fixed fully amortized loan in three years" were fraudulent business practices or acts prohibited by section 17200. The second cause of action further alleged that the act of "approving the two loans for a total of $653,125 without regard to the actual fair market value of the Northridge Residence" was a wrongful act. (Caps omitted.)

In the third cause of action for declaratory relief, appellants alleged they were entitled to relief under a consent judgment entered in the United States District Court for the District of Columbia and a national settlement signed by multiple lenders, including Chase and Wells Fargo, which allegedly required lenders to "refinance loans applicable under the specific terms of the Settlement," "meet certain loan modification, refinancing, or principal reduction criteria outlined specifically in the Settlement and, in turn, credit such loan modification, refinancing, or principal reduction to its specified quota-for-credit transfer formula detailed in the Settlement with a specified timeline for each such modification, refinancing, or principal reduction . . . no later than three years from the date of execution of the consent judgment[/]Settlement date."

## C. *Respondents' Demurrer*

Respondents demurred to the FAC. They contended the first cause of action for fraud had been pled with insufficient specificity and that the representations set forth were not actionable. They contended that the second cause of action for unfair competition failed to identify a business practice that was unfair, fraudulent

5

or unlawful.  Finally, they contended the third cause of action for declaratory relief did not clearly identify any actual controversy.

In their opposition, appellants argued that the lack of specificity was justified because "[the] borrower who has limited contact with the various agents of an institution several years prior is more likely to remember those persons based on the positions they occupied and the roles they played in the transaction rather than by their names," and that respondents "possess records . . . that will indicate the identities of those persons involved in the transactions with [appellants]." Appellants further alleged that the FAC asserted facts sufficient to set forth a claim for fraudulent concealment of the following facts:  (1) "the method for appraising the valuation of the property was highly speculative"; (2) "the stated amount of the monthly payment for the ARM loan would increase substantially"; and (3) "the two loans included a negative amortizing feature, meaning that the more plaintiffs paid, the more they owe." (Caps omitted.)  Appellants also contended that sufficient facts had been alleged with respect to the unfair competition and declaratory relief causes of action.  The opposition did not set forth any manner in which the FAC could be further amended to supplement any of the causes of action.

The trial court sustained the demurrer without leave to amend.  Judgment was entered.  This appeal followed.

## DISCUSSION

A. *Standard of Review*

"'A demurrer tests the legal sufficiency of the complaint . . . .' [Citations.] On appeal from a dismissal after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law.  [Citations.]  When the trial court

6

sustains a demurrer without leave to amend, we must also consider whether the complaint might state a cause of action if a defect could reasonably be cured by amendment. If the defect can be cured, then the judgment of dismissal must be reversed to allow the plaintiff an opportunity to do so." (*Flying Dutchman Park, Inc. v. City and County of San Francisco* (2001) 93 Cal.App.4th 1129, 1134; accord, *Boschma*, *supra*, 198 Cal.App.4th at p. 243.) Once the trial court sustains a demurrer without leave to amend, the plaintiff's burden on appeal is to demonstrate "there is a reasonable possibility the defect in the pleading can be cured by amendment. [Citation.]" "''. . . [The] [p]laintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading . . . .'' [Citation.]' [Citation.]" (*Palm Springs Tennis Club v. Rangel* (1999) 73 Cal.App.4th 1, 7-8.)

B. *Fraud*

Appellants contend that liberally construed, the FAC sufficiently alleges a fraud claim based on either affirmative misrepresentation or negative concealment. For the reasons discussed, we disagree.

1. *Affirmative Misrepresentation*

To establish a claim for affirmative fraudulent misrepresentation, the plaintiff must plead and prove: "'(1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in

7

causing that harm to the plaintiff. [Citations.]' [Citation.]" (*Perlas v. GMAC Mortgage, LLC* (2010) 187 Cal.App.4th 429, 434, italics deleted, quoting *Manderville v. PCG&S Group, Inc*. (2007) 146 Cal.App.4th 1486, 1498.) Each of the elements "must be pleaded with specificity rather than with '"general and conclusory"' allegations." (*Boschma*, *supra*, 198 Cal.App.4th at p. 248, quoting *Small v. Fritz Companies, Inc*. (2003) 30 Cal.4th 167, 184.)

Courts enforce the specificity requirement for two purposes: "The first purpose is to give notice to the defendant with sufficiently definite charges that the defendant can meet them. [Citation.] The second is to permit a court to weed out meritless fraud claims on the basis of the pleadings; thus, 'the pleading should be sufficient "'to enable the court to determine whether, on the facts pleaded, there is any foundation, prima facie at least, for the charge of fraud.'"'" (*West v. JPMorgan Chase Bank, N.A*. (2013) 214 Cal.App.4th 780, 793, quoting *Committee on Children's Television, Inc. v. General Foods Corp*. (1983) 35 Cal.3d 197, 216-217, superseded by statute on another ground as stated in *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227.) Accordingly, the normal policy of liberally construing pleadings against a demurrer cannot be invoked to sustain an insufficiently specific fraud cause of action. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645.)

As a general rule, "[t]he specificity requirement means a plaintiff must allege facts showing how, when, where, to whom, and by what means the representations were made, and, in the case of a corporate defendant, the plaintiff must allege the names of the persons who made the representations, their authority to speak on behalf of the corporation, to whom they spoke, what they said or wrote, and when the representation was made." (*West v. JPMorgan Chase Bank, N.A.*, *supra*, 214 Cal.App.4th at p. 793.) However, the rule may be relaxed and less specificity may be required when "'it appears from the nature of the

8

allegations that the defendant must necessarily possess full information concerning the facts of the controversy.'" (*Committee on Children's Television, Inc. v. General Foods Corp.*, *supra*, 35 Cal.3d at p. 217; see *Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 158 ["[T]he requirement of specificity is relaxed when the allegations indicate that 'the defendant must necessarily possess full information concerning the facts of the controversy' [citations] or 'when the facts lie more in the knowledge of the opposite party[.]'"].) For example, a plaintiff could not be expected to know the precise identity of the person making an alleged misrepresentation if it was made over the phone by an anonymous employee or in an unsigned document. In that situation, the plaintiff must allege as much information as he or she can, such as the date of the conversation in which the representation was made, the title of the person making the representation and the name of the department in which the person worked. (See, e.g., *West v. JPMorgan Chase Bank, N.A.*, *supra*, 214 Cal.App.4th at pp. 793-794 [complaint sufficiently identified persons making representations on defendant's behalf where plaintiff alleged that on one date, she spoke with "a supervisor" in defendant's "loan modification department" and on another date, with another employee in that department; fraud claim also supported by letter from defendant, attached to the complaint, bearing no signature]; *Boschma*, *supra*, 198 Cal.App.4th 248 [fraud pled with sufficient specificity where plaintiffs attached documents containing alleged misrepresentations, although precise identities of employees responsible for preparing documents was not clear].)

Here, appellants alleged that "lending personnel" of respondents Bear Stearns and/or Chase made false representations regarding the fair market value of the property, the availability of future refinancing, and the appreciation that could be expected. They specified neither dates nor approximate dates on which the representations were made. Nor did they specify the circumstances surrounding

9

the conversations that led to the representations, such as whether they were made in person or telephonically. They also failed to provide any information that would assist in identifying the speakers, such as the location of the departments or branches in which they worked or the positions they held. Respondents would be unable to investigate the allegations or take any meaningful steps to prepare a defense. Reviewing the allegations, we are unable to determine whether a sufficient foundation exists to assert a fraud claim against the named defendants. The FAC was deficient for failing to allege fraud with sufficient specificity.

Moreover, to the extent appellants sought to base their claim of fraud on the lender's appraisal of the property's fair market value, it has long been held that an appraisal commissioned by the lender in the course and scope of processing a loan is obtained solely "to protect [the lender's] interest by satisfying it that the property provide[s] adequate security for the loan" and that "it is not reasonably foreseeable that a borrower will be influenced to his or her detriment by an appraisal prepared by the lender for its own benefit . . . ." (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1096, 1099.) As the court explained in *Nymark*: "Plaintiff [the home purchaser] was in as good a position as, if not better position than, defendant [the lender] to know the value and condition of the property. One who seeks financing to purchase real property has many means available to assess the property's value and condition, including comparable sales, advice from a realtor, independent appraisal, contractors' inspections, personal observation and opinion, and the like. . . . Stated another way, the borrower should be expected to know that the appraisal is intended for the lender's benefit to assist it in determining whether to make the loan, and not for the purpose of ensuring that the borrower has made a good bargain, i.e., not to insure the success of the investment." (*Id.* at p. 1099.) Accordingly, appellants' attempt to rely on the lender's appraisal to support their fraud claim is unwarranted.

10

Finally, "[a]n essential element of a cause of action for negligent misrepresentation is that the defendant must have made a misrepresentation as to a past or existing material fact." (*Gentry v. eBay, Inc.* (2002) 99 Cal.App.4th 816, 835.) "'[Predictions] as to future events . . . are deemed opinions, and not actionable fraud.'" (*Nibbi Brothers. v. Home Federal Sav. & Loan Assn.* (1988) 205 Cal.App.3d 1415, 1423, quoting 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 447, p. 2712; accord, *Cansino v. Bank of America* (2014) ___ Cal.App.4th ___ [2014 Cal.App. LEXIS 277].) To the extent appellants based their claim on the alleged statement that property values would rise in the future, they failed to allege an actionable misrepresentation.

### 2. *Fraudulent Concealment*

Apparently cognizant of the weaknesses in their fraud claim, appellants contend the allegations of the FAC can be read as asserting a claim for fraudulent concealment.[5] On appeal, they contend the FAC can be read to allege (1) "[r]espondents knew that the [fair market value] for the Property was lower than the $687,500 appraised value and that the appraisal was based on unreliable and highly speculative methodology"; (2) "[r]espondents knew that if [a]ppellants accepted the Loans based on the appraised value and the proposed purchase price that [a]ppellants would realize immediate and substantial negative equity"; (3)

---

[5]    The elements of a cause of action based on fraudulent concealment are: "'(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.'" (*Boschma*, *supra*, 198 Cal.App.4th at p. 248, quoting *Hahn v. Mirda* (2007) 147 Cal.App.4th 740, 748.)

11

"[r]espondents . . . knew that the appraised value was not a valid or useful indication of the rate of appreciation that could be expected"; and (4) "[r]espondents knew that based on the inflated appraisal and the proposed unfavorable loan terms, subsequent refinancing of the Property would not be available."[6]

Appellants' attempt to recast the affirmative misrepresentation claim as one for failure to disclose or fraudulent concealment is unavailing. Each of the alleged concealments of material fact is dependent on the reasonableness of appellants' reliance on the lenders' appraisal, rather than their own independent investigation, to establish the fair market value of the property at the time of the sale. As discussed above, under accepted California authority, a buyer's reliance on the lender's appraisal of the subject property is unreasonable as a matter of law.

More fundamentally, appellants' contentions concerning the viability of a fraudulent concealment claim is the belief that a lender has a duty to look out for the borrower and warn him or her when a property may not be a good investment. This is contrary to California law, which imposes no such paternalistic duty on a lender. (See e.g., *Bily v. Arthur Young & Company* (1992) 3 Cal.4th 370, 403 ["As a matter of economic and social policy, [investors] should be encouraged to rely on their own prudence, diligence, and contracting power, as well as other informational tools. This kind of self-reliance promotes sound investment and credit practices and discourages the careless use of monetary resources."]; *Nymark*

---

[6] This is in contrast to the contentions in appellants' opposition to the demurrer that a claim for fraudulent concealment was supported by respondents' failure to inform appellants that the payments on the loan would increase substantially and that the loans had negative amortizing features. Any contention that such information was withheld from appellants was contradicted by the FAC itself, which alleged that appellants were told they would obtain years of appreciation "before having to pay the much higher ARM payment which would be required beginning September 2011."

*v. Heart Fed. Savings & Loan Assn.*, *supra*, 231 Cal.App.3d at p. 1096 ["[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."]; *Das v. Bank of America, N.A.* (2010) 186 Cal.App.4th 727, 740, quoting *Sierra-Bay Fed. Land Bank Assn. v. Superior Court* (1991) 227 Cal.App.3d 318, 334 ["'[A] commercial lender is not to be regarded as the guarantor of a borrower's success and is not liable for the hardships which may befall a borrower.'"]; *Oaks Management Corporation v. Superior Court* (2006) 145 Cal.App.4th 453, 466 ["[A]bsent special circumstances . . . a loan transaction is at arm's length and there is no fiduciary relationship between the borrower and lender."]; *Wagner v. Benson* (1980) 101 Cal.App.3d 27, 35 [where plaintiffs, self-described "inexperienced investors," alleged they suffered substantial harm from bank's negligence in loaning money to them for "a risky venture," court held bank owed no duty of care in approving their loan].)[7]

This principle is illustrated by *Perlas v. GMAC Mortgage, LLC*, *supra*, 187 Cal.App.4th 429, in which the plaintiff borrowers alleged that they relied on the lender's determination that they qualified for a loan as an implicit representation that they could afford the loan based on the income information provided. (*Id*. at p. 434.) In holding that plaintiffs would be unable to amend to state a claim for fraudulent misrepresentation or fraudulent concealment, the court stated:

---

[7] Appellants' attempt to rely on *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp*. (2007) 157 Cal.App.4th 835 to support the existence of a duty of care is misplaced. The defendant in that case was engaged in investment banking, overseeing the creation of an offering memorandum for unregistered promissory notes, acting as an initial purchaser, and reselling the notes to qualified buyers. (*Id*. at pp. 843, 847.) We held that the defendant had a duty to disclose material facts, such as the issuing entity's poor third quarter and inflated financial estimates, to purchasers of the registered securities that replaced the notes. (*Id*. at pp. 859-862.) The defendant there was not acting in a conventional role as a mere lender of money.

13

"[Plaintiffs] appear to conflate loan qualification and loan affordability. In effect, [plaintiffs] argue that they were entitled to rely upon [the lender's] determination that they qualified for the loans in order to decide if they could afford the loans. [Plaintiffs] cite no authority for this proposition, and it ignores the nature of the lender-borrower relationship. . . . A lender is under no duty 'to determine the borrower's ability to repay the loan . . . The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's.' (*Renteria v. U.S.* (D.Ariz. 2006) 452 F.Supp.2d 910, 922-923 [borrowers rely on their own judgment and risk assessment in deciding whether to accept the loan] . . . .)" (*Id.* at p. 436, italics deleted.)

As the FAC asserted no cognizable claim for fraud under either an affirmative misrepresentation or a fraudulent concealment theory, the demurrer to that cause of action was property sustained. Ordinarily, a plaintiff would be given at least one chance to amend to correct the defects. Here, however, appellants were on notice of the deficiencies of the fraud claim in their original complaint and attempted to amend the allegations in the FAC. As the deficiencies remained after the amendment and appellants fail to show any manner in which the FAC could be amended to cure the defects, the demurrer was properly sustained without leave to amend.

C. *Unfair Competition in Violation of Section 17200*

Section 17200 et seq., California's unfair competition law, has as its "major purpose 'the preservation of fair business competition.'" (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co*. (1999) 20 Cal.4th 163, 180 (*Cel-Tech*), quoting *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 110.) It does not proscribe specific acts, but "broadly prohibits 'unfair competition,' meaning 'any unlawful, unfair or fraudulent business act or practice

14

and unfair, deceptive, untrue or misleading advertising.'" (*Dey v. Continental Central Credit* (2008) 170 Cal.App.4th 721, 726, quoting Bus. & Prof. Code, § 17200.)  Because it is written in the disjunctive, "'it establishes three varieties of unfair competition -- acts or practices which are [(1)] unlawful, or [(2)] unfair, or ([3]) fraudulent. . . .'" (*Cel-Tech*, *supra*, at p. 180.)  "By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." (*Ibid.*)  For an action to constitute an unfair business practice, "'the public policy which is a predicate to the action must be "tethered" to specific constitutional, statutory or regulatory provisions.'" (*Scripps Clinic v. Superior Court* (2003) 108 Cal.App.4th 917, 940.)

In the FAC, appellants contended that respondents had engaged in unfair competition by making fraudulent representations regarding the fair market value of the property, the availability of future refinancing, and the appreciation that could be expected.  On appeal, they abandon that contention and assert for the first time that respondents engaged in unfair competition by violating federal regulations, specifically title 12 of the Code of Federal Regulations (12 C.F.R.), part 34, which requires lenders to obtain appraisals for real estate related financial transactions unless certain exceptions apply (12 C.F.R. § 34.43), and further requires that such appraisals "[c]onform to generally accepted appraisal standards as evidenced by the Uniform Standards of Professional Appraisal Practice (USPAP) promulgated by the Appraisal Standards Board of the Appraisal Foundation . . . unless principles of safe and sound banking require compliance with stricter standards . . . ." (12 C.F.R. § 34.44(a); see also § 34.42(g) [defining "market value" as "the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer

15

and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus"].)

Preliminarily, we note that any attempt to assert a section 17200 claim predicated on violations of federal banking regulations is likely preempted by federal law. (See *Reed v. Wells Fargo Bank* (N.D.Cal., May 11, 2011) 2011 U.S. Dist. LEXIS 65608 at *12 and cases cited therein.) We need not resolve the preemption issue, however, as appellants failed to adequately plead an unfair competition claim based on any alleged violation of part 34 of 12 C.F.R. (See *Gregory v. Albertson's, Inc.* (2002) 104 Cal.App.4th 845, 857 [demurrer to unfair competition claim properly sustained where complaint identified no particular section of pertinent statutory scheme and failed to describe with reasonable particularity facts supporting a violation].) Nor have they identified how the defects in the pleading could be cured.

Appellants contend that respondents utilized an appraisal report prepared in a manner not in conformance with USPAP standards. They do not state what USPAP standards were violated, how they were violated, or how the lender would have known they were violated, and we will not engage in speculation to cure this omission.[8] Their brief suggests that the fair market value was exaggerated by the appraiser, but the FAC acknowledged that conditions in the financial world had caused the price of real property to be inflated at the time they purchased their home. Indeed, it was appellants who contracted with the sellers to purchase the

---

[8]     We note that even if an unfair competition claim predicated on violation of part 34 of 12 C.F.R. had been adequately pled, the only defendant implicated would have been Bear Stearns, the lender, and possibly Chase, assuming it is somehow responsible for Bear Stearns' liabilities.

16

home for $687,500.[9]  The failure to foresee the collapse of the real estate market does not constitute an unfair business practice or a violation of federal regulations. The demurrer to the second cause of action for unfair competition was properly sustained.[10]

D. *Declaratory Relief*

Section 1060 of the Code of Civil Procedure authorizes a party "who desires a declaration of his or her rights or duties with respect to another" to bring an original action "'for a declaration of his or her rights and duties,'" and permits the court to issue "'a binding declaration of such rights or duties.'"  "'An essential requirement of the procedure . . . is that there be a real controversy . . . between parties, involving justiciable questions relating to their rights and obligations. Facts and not conclusions of law must be pleaded which show a controversy of concrete actuality as opposed to one which is merely academic or hypothetical . . . .'" (*Jessin v. County of Shasta* (1969) 274 Cal.App.2d 737, 743, quoting *Wilson v. Transit Authority of Sacramento* (1962) 199 Cal.App.2d 716, 722.)

---

[9]  Generally, before a buyer approaches a lender for a loan, the price or value of the property is determined by negotiations between the buyer and seller, both assisted by realtors, based on comparative sales and any other relevant conditions that prevail at the time.  Appellants do not suggest that any different procedure was followed in their case.

[10]  At oral argument, counsel for appellants raised legal and factual theories neither presented to the trial court nor discussed in the briefs.  We need not consider new matters presented after the normal briefing process has concluded.  (*Japan Line, Ltd. v. County of Los Angeles* (1977) 20 Cal.3d 180, 184, revd. on other grounds (1979) 441 U.S. 434; accord, *In re Estate of McDaniel* (2008) 161 Cal.App.4th 458, 463 ["'It is a clearly understood principle of appellate review . . . that contentions raised for the first time at oral argument are disfavored and may be rejected solely on the ground of their untimeliness.'"].)  In any event, counsel did not clearly articulate any theory to support appellants' ability to assert a cognizable cause of action.

In the third cause of action for declaratory relief, appellants alleged that a consent judgment entered in the United States District Court for the District of Columbia and a national settlement signed by multiple lenders, including Chase and Wells Fargo, required lenders to "refinance loans applicable under the specific terms of the Settlement," "meet certain loan modification, refinancing, or principal reduction criteria outlined specifically in the Settlement and, in turn, credit such loan modification, refinancing, or principal reduction to its specified quota-for-credit transfer formula detailed in the Settlement with a specified timeline for each such modification, refinancing, or principal reduction . . . no later than three years from the date of execution of the consent judgment[/]Settlement date." They did not claim to be parties to the consent judgment or the settlement or allege how either applied to their situation.[11] In their brief on appeal, they state "[t]he course of events leading to the eventual foreclosure and sale of [a]ppellants' Property creates a genuine legal controversy over whether or not [r]espondents have complied with their legal obligations under the Consent Judgment and what relief [a]ppellants may be entitled to as a result." These vague and conclusory allegations do not support their claim to entitlement to declaratory relief. Respondents' demurrer was properly sustained as to the declaratory relief cause of action.

_____

[11]    The consent judgment was entered in April 2012, months after appellants' home had been sold through foreclosure.

18

**DISPOSITION**

The judgment is affirmed.  Respondents are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



MANELLA, J.


We concur:


EPSTEIN, P. J.


EDMON, J.*


---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19